O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(In Chambers) Order Granting Partial Summary Judgment for Plaintiff [Document #41 & 42]**

Before this Court is Plaintiff's motion for partial summary judgment.  The Court finds the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; Local R. 7-15.  After considering the moving and opposing papers, the Court hereby grants the motion.

I.     Background

The Kindred ("the Film") is a theatrical motion picture that was produced in 1986 and released in U.S. theaters in early 1987.  The Film was financed and its copyright was owned by Plaintiff in this action, the Kindred Limited Partnership ("TKLP").  Kindred Productions, Inc. ("KPI") and F/M Entertainment Inc. ("F/M Entertainment") entered into a collective bargaining agreement (the "Union Agreement") with Defendant Screen Actors Guild, Inc. ("SAG") in order to be able to employ SAG actors for the Film.  The Union Agreement required the producers of the Film to pay residuals to SAG based upon the revenues earned from the Film's exploitation. In order to secure KPI's performance under the Union Agreement, TKLP entered into a Security Agreement with SAG.[1]  The Security Agreement identified TKLP's rights in the Film as collateral and set forth a specific list of events that would constitute default entitling SAG to foreclose on the Film.

---

[1] Paragraph 1 of the Security Agreement specifies that it is "between The Kindred Limited Partnership as Debtor (hereinafter called 'Producer') and Screen Actors Guild as Secured Party (hereinafter 'The Guild)."  *UF* ¶ 3.  KPI is also a signatory to the Security Agreement. *Gowin Decl*. Ex. 8 at p.8.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|----------|------------------------|------|------------------|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

In 1989, SAG filed a claim in arbitration against F/M Entertainment and KPI, alleging that SAG was owed pension, health, and welfare contributions under the Union Agreement. TKLP was not a party to the arbitration. The arbitrator granted an award in favor of SAG, and on November 9, 1990, the Los Angeles Superior Court entered judgment against F/M Entertainment and KPI. TKLP was not named as a defendant in the judgment.

On September 23, 2004, SAG mailed a "Notice of Default" to "F/M Entertainment Co., The Kindred Limited Partnership, Feldman/Meeker, 9401 Wilshire Blvd. #600, Beverly Hills, CA 90212." The letter advised the addressees of their default under the Security Agreement, claiming that SAG was owed $98,163.58. TKLP claims that it did not receive this notice of default because the address was out of date. However, the address on the letter is the address indicated for TKLP in the Security Agreement; it is also TKLP's address for service of process currently on file with the California Secretary of State.

On November 9, 2004, SAG held a public disposition of the Film, where SAG itself purchased the Film for $10,000. In 2006, SAG sold the Film to Synapse Films, Inc. ("Synapse") for $18,000. TKLP claims that it did not learn of the foreclosure and sale of the Film to Synapse until late November 2006. On January 11, 2007, Charles Meeker, on behalf of F/M Entertainment, TKLP, and F/M's subsidiaries and affiliates, wrote a cease and desist letter to SAG and Synapse. In response, Synapse claimed lawful title to the Film.

On April 3, 2008, TKLP filed suit against Synapse, SAG, and Technicolor, Inc. ("Technicolor").[2] Synapse and TKLP have since reached a settlement agreement whereby Synapse agreed to return the copyright to the Film to TKLP for $18,000. TKLP now moves for partial summary judgment, contending that SAG's foreclosure was invalid as a matter of law because there was no default under the Security Agreement. SAG and Technicolor oppose the motion, arguing that a event of default occurred.

II.     Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[2] TKLP alleges that Technicolor delivered Film materials to SAG and Synapse without TKLP's permission.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial.  *See id.* at 257.

A non-moving party who bears the burden of proving at trial an element essential to its case must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  *See Anderson*, 477 U.S. at 250-51.  If the moving party seeks summary judgment on a claim or defense for which it bears the burden of proof at trial, the moving party must use affirmative, admissible evidence.  Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue.  *See* Fed. R. Civ. P. 56(e).

III.     Discussion

The facts of this case are largely undisputed.  The parties disagree, however, on whether an "event of default" occurred under the Security Agreement.

The Security Agreement provides:

> Upon the occurrence of any one or more of the Events of Default (as defined in Paragraph 4), Producer agrees that the Guild shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code or other applicable law.

*Meeker Decl.* Ex. A at ¶ 3.  "Producer" refers to TKLP.  *Id.* at p.1.

The Security Agreement defines "an event of default" to mean only:

> (a) Entry of a final non-appealable order against Producer ordering Producer to pay the Secured Obligations and Producer's failure to pay such amounts within fifteen (15) business days thereafter; or

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

(b) The filing by Producer of a voluntary petition in bankruptcy or seeking reorganization or to effect a plan or other arrangement with creditors, or the filing by Producer of an answer admitting the jurisdiction of the Court and the material allegations of an involuntary petition filed pursuant to any Act of Congress relating to bankruptcy or reorganization, or the adjudication of Producer as bankrupt, or the making of an assignment by producer for the benefit of creditors or the application for, or consent to, the appointment of or that an order be made appointing any receiver or trustee for all or a substantial part of the Collateral and the properties thereof, or the entry of an Order pursuant to any Act of Congress relating to the bankruptcy or reorganization of Producer and the failure to have such order or orders vacated or stayed within thirty (30) days after entry; or

(c) The levy or an attachment, execution, or other write on all or any part of the Collateral, the properties thereof, or all or a substantial part of the assets of Producers and the continuation of same for more than thirty (30) days; or

(d) The winding up, liquidation or dissolution of Producer, and/or the distribution, sale and /or transfer of substantially all of its assets, except as the same may be permitted by the Guild in writing unless a Buyer's Assumption Agreement has been signed in form satisfactory to the Guild and which has been accepted by the Guild.

*Id.* at ¶ 4.
According to TKLP, SAG identified in its interrogatory replies three potential events of default triggering SAG's right to foreclose on the Film: (1) SAG's judgment against F/M Entertainment and KPI; (2) F/M Entertainment's Chapter 11 bankruptcy filing, and (3) the purported dissolution of TKLP.

    *A.    The Judgment*

The first paragraph of the Security Agreement states that TKLP is referred to as "Producer" thereafter in the Agreement. *Meeker Decl.* Ex. A at p.1. Paragraph 4(a) of the Security Agreement provides that entry of a "final non-appealable order against Producer ordering Producer to pay the Secured Obligations and Producer's failure to pay such amounts" shall constitute an event of default. *Id.* at ¶ 4(a).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

It is uncontroverted that SAG never obtained a court order or judgment against TKLP. *UF* ¶ 9. TKLP contends that SAG's judgment against F/M Entertainment and Kindred Productions does not satisfy Paragraph 4(a). According to TKLP, KPI is an independent company with no relationship to TKLP, and F/M Entertainment Co., the party named in the judgment, does not exist. TKLP suggests that SAG may have been attempting to secure a judgment against F/M Entertainment Inc., the general partner of TKLP. However, even if the judgment is valid against F/M Entertainment, Inc., TKLP argues, it does not constitute a judgment against TKLP. In opposing the motion for summary judgment, SAG argues that TKLP is "estopped" from relying on the fact that it was not named in the judgment because TKLP was fully aware of the arbitration proceeding and never objected on the ground that it was not named in the proceeding.

Assuming, for the purposes of argument, that TKLP had actual knowledge of the arbitration and judgment, the judgment against F/M Entertainment and/or TKLP's failure to object to the proceedings do not operate as a judgment against TKLP. Under general common law principles, a judgment may not be entered against one not a party to an action, even if the nonparty was aware of the suit and could have intervened. *See Valley Nat. Bank of Ariz. v. A.E. Rouse & Co.*, 121 F.3d 1332, 1336 (9th Cir. 1997) (collecting cases); William A. Schwarzer, A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial § 7:65 (The Rutter Group 2008). Further, a judgment against an  member of a partnership in the member's individual capacity is not an award against the partnership where the partnership was not also designated as a defendant. *See Barr Lumber Co. v. Old Ivy Homebuilders, Inc.*, 34 Cal. App. 4th Supp. 1, 5, 40 Cal. Rptr. 2d 717 (1995); *Hildebarnd v. Stonecrest Corp.*, 174 Cal. App. 2d 158, 169 (1959); *Ferry v. North Pacific Stages*, 112 Cal. App. 348, 351 (1931) ("[D]escriptions of individuals as members of an association or partnership do not constitute the organization itself a party to the action.").

Alternatively, SAG argues that the judgment against KPI satisfies Paragraph 4(a) of the Security Agreement, which provides that a judgment "ordering Producer to pay the Secured Obligations" constitutes an event of default, because KPI was a producer of the Film. In support of this argument, SAG points out that KPI "is identified as a 'Producer' in the documents relating to the Film" and that KPI was a signatory to the Security Agreement. *Opp*. 8:10-11. SAG also maintains that TKLP was *not* a producer of the Film.

SAG's argument is flawed because the Security Agreement clearly provides, in its opening lines, that TKLP is "hereinafter referred to as 'Producer.'" *Meeker Decl.* Ex. A at p.1; *see also id.* at p.8 ("Producer: The Kindred Limited Partnership" appears above signature block).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

Thus, the term "Producer," as it is used in the Security Agreement, is a distinct reference to TKLP—not simply a blanket reference to any producer of the Film.  The "Secured Obligations" are defined in the Security Agreement as  KPI's obligations under the Union Agreement.  *Id*. at p.1 (a).  Thus, under the plain language of the Security Agreement, a judgment requiring TKLP to pay KPI's obligations is the only event that constitutes default as set forth in Paragraph 4(a). This construction is somewhat puzzling, but the Court will not, under the guise of interpretation, rewrite the contract because it questions the efficacy or wisdom of the parties' chosen language.[3]  *See, e.g., London Market Insurers v. Sup. Ct.*, 146 Cal. App. 4th 648, 670, 53 Cal. Rtpr. 3d 154 (2007); 11 Williston on Contracts § 31:5 (4th ed. 2008). The Court finds that the judgment confirming the arbitration award against F/M Entertainment and KPI does not constitute an "event of default" under terms of the Security Agreement.  Accordingly, it was not a valid basis for foreclosure on the Film.

> **B.**     *F/M Entertainment Bankruptcy Filing and Purported Dissolution of TKLP*

Next, TKLP contends that the Chapter 11 bankruptcy filing of its general partner, F/M Entertainment,[4] does not constitute an event of default under the Security Agreement.  SAG argues that it is not the bankruptcy itself, but rather TKLP's purported dissolution, which was caused by the insolvency of its general partner, that is an event of default.

Paragraph 4(d) of the Security Agreement defines "[t]he winding up, liquidation or dissolution of Producer, and/or the distribution, sale and /or transfer of substantially all of its assets, except as the same may be permitted by the Guild in writing" as an event of default. *Meeker Decl.* Ex. ¶ A 4(d).  Paragraph 12.01(e) of TKLP's partnership agreement provides that the partnership "shall be dissolved" upon the bankruptcy of its general partner.  *Meeker Decl*. Ex. G ¶ 12.01(e).  TKLP's general partner, F/M Entertainment, filed for bankruptcy on June 21, 1989.  *See Meeker Decl*. Ex. D  Accordingly, it appears that TKLP dissolved on June 21, 1989

---

[3]     SAG has not, for instance, argued or set forth any evidence that the parties erroneously indicated that TKLP would be referred to as "Producer" in the Security Agreement when they meant to so designate KPI, or shown that the parties intended the term "Producer" to have a meaning in Paragraph 4(a) other than that given at the outset of the Agreement (that is, as a shorthand reference to TKLP).

[4] TKLP's general partner, F/M Entertainment, Inc., later became known as F/M Releasing Corp.  *Mot*. 10:1-2.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

and that the dissolution constitutes an event of default under Paragraph 4(d) of the Security Agreement.  However, TKLP maintains that it amended its partnership agreement to ensure that the Chapter 11 filing by F/M Entertainment would have no adverse effect upon the continuance of the partnership and to delete Paragraph 12.01(e) of the original partnership agreement.  *See Meeker Decl*. Ex. H.  TKLP argues that the effective date of the amendment was June 20, 1989 and that retroactive amendment to avoid dissolution is valid under the applicable law.

SAG responds that the purported amendment to TKLP's partnership agreement was ineffective because the corporate status of TKLP's general partner is suspended.  The purported amendment to TKLP's partnership agreement was executed in December 2008 by general partner F/M Entertainment and limited partner P. Michael Smith.  *Meeker Decl*. Ex. H at p.2.  However, a Certificate of Status issued by the California Secretary of State indicates that F/M Entertainment's corporate status was suspended on July 11, 1990.  *Dfts' Request for Judicial Notice* Ex. B.  The parties dispute what effect, if any, F/M's suspended status had on TKLP's ability to amend the partnership agreement.

The statute which SAG relies upon, Cal. Rev. & Tax. Code § 23301,  provides that the corporate powers, rights and privileges of a corporation may be suspended for failure to pay taxes.  It is not clear if this statute prevents a suspended corporation from entering into or amending a partnership agreement.  SAG has not pointed to any case finding a partnership agreement to be invalid based on the suspended corporate status of one of its members, and the Court has found none through its own research.  Therefore, the Court looks to the treatment of suspended corporations in similar contexts.

Cal. Rev. & Tax. Code § 23304.1 provides that contracts entered into by a suspended corporation are not void, but rather merely voidable at the option of the other party. *Performance Plastering v. Richmond Am. Homes of California, Inc*., 153 Cal. App. 4th 659, 63 Cal. Rptr. 3d 537 (2007).  The rationale behind this rule is that the purpose of Cal. Rev. & Tax. Code § 23301 is to "put pressure on the delinquent corporation to pay its taxes," not to punish the noncomplying corporation.  *See Gardiner Solder Co. v. Supalloy Corp*., Inc., 232 Cal. App. 3d 1537, 1542, 284 Cal. Rptr. 206 (1991) (*citing Peacock Hill Ass'n v. Peacock Lagoon Construction Co.* , 8 Cal. 3d 369, 105 Cal. Rptr. 29 (1972)); *Depner v. Joseph Zukin Blouses*, 13 Cal. App. 2d 124, 127-28 (1936) (third party could not claim that modification of lease was void as result of suspension of lessees' corporate powers).  SAG has not shown why it, as a third party, should be able to claim that the partnership agreement is void due to F/M Entertainment's suspension.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

As it appears that the 2008 amendment to the partnership agreement was valid, then, the question remains whether it was retroactively effective so as to prevent immediate dissolution on June 21, 1989 and default.  TKLP insists that the effective date of the 2008 amendment was June 20, 1989.  It argues that California law allows partners to cancel dissolution "at any time," and that in the event of dissolution the cancellation is retroactive such that dissolution is deemed never to have occurred.  In support of this argument, TKLP cites Cal. Corp. Code § 16802(b), which provides:

> b) At any time after the dissolution of a partnership and before the winding up of its business is completed, all of the partners, including any dissociating partner other than a wrongfully dissociating partner, may waive the right to have the partnership's business wound up and the partnership terminated. In that event both of the following apply:
>
> (1) The partnership resumes carrying on its business as if dissolution had never occurred, and any liability incurred by the partnership or a partner after the dissolution and before the waiver is determined as if dissolution had never occurred.
>
> (2) The rights of a third party accruing under paragraph (1) of Section 16804 or arising out of conduct in reliance on the dissolution before the third party knew or received a notification of the waiver may not be adversely affected.

Cal. Corp. Code § 16802(b)(2) (emphasis added).  However, if SAG relied on TKLP's alleged dissolution in foreclosing on the Film, section 16802(b)(2) would expressly prevent TKLP's retroactive amendment from adversely affecting SAG's rights.

TKLP claims that SAG learned of TKLP's purported dissolution only recently and therefore could not have relied on this alleged "event of default" in foreclosing on the Film.  *UF* ¶ 20.  In support of this assertion, TKLP cites the deposition testimony of SAG's Fed. R. Civ. P. 30(b)(6) deposition designee, Susan Lowry, who testified that the only paragraph of the Security Agreement that SAG relied on with respect to the notice of default that lead to the foreclosure sale was Paragraph 4(a).  *UF* ¶ 22.  Furthermore, the Notice of Default sent by SAG indicated only that "[t]he default consists of Debtor's Failure to comply with its obligations relating to Guild reporting requirements, and failure to make payments owed to employees represented by the Guild as required under the terms of the applicable Guild collective bargaining agreement";

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-2220 PSG (PJWx) | Date | February 3, 2009 |
|---|---|---|---|
| Title | The Kindred Limited Partnership v. Screen Actors Guild, Inc., et al. | | |

it did not mention the bankruptcy filing or TKLP's purported resulting dissolution. *Meeker Decl.* Ex. E.

 SAG responds that it listed additional events of default in its answers to TKLP's interrogatories.  Although SAG's response to TKLP's Interrogatory No. 3 lists the bankruptcy filing of F/M Entertainment and TKLP's dissolution as events of default, it does not indicate that SAG *relied* on either of those events in foreclosing on the Film.  *See UF* ¶¶ 19-20.  Accordingly, no genuine issue of material fact remains for trial with regard to whether F/M Entertainment's bankruptcy filing was an "event of default" under the Security Agreement.

IV.    Conclusion

 Because TKLP has established that no triable issue of material fact exists as to whether an "event of default" occurred under the Security Agreement, the Court finds that SAG's foreclosure on the Film was invalid.  Therefore, the motion for partial summary judgment is GRANTED.

 **IT IS SO ORDERED.**

AB for WH